No. 8760.

Orleans Appeal.

---

MARKS RIBBON CO., Appellant, v. M. ROSENSTOCK.

---

(February 2, 1925, Opinion and Decree.)

---

(Syllabus by the Court.)

1. Louisiana Digest, Sales—Par. 59.
Where goods are sold for future delivery under an agreement that the vendee shall have the benefit of any decline in the market at the time of delivery, the vendee is under no obligation to accept delivery unless the vendor is willing to accept a diminution of the price commensurate with the decline of the market.

Appeal from 28th Judicial District Court, Hon. Prentice E. Edrington, Judge.

This is a suit for the purchase price of goods and damages for defendant's refusal to accept delivery.

There was judgment for plaintiff for a small amount and plaintiff appealed.

Judgment affirmed.

Alfred E. Billings, and Justin Wolff, attorneys for plaintiff and appellant.

C. A. Buchler, attorney for defendant and appellee.

WESTERFIELD, J. The plaintiff whose place of business is in the City of New Orleans, sold to defendant, who resides in the Parish of Jefferson, certain merchandise for future delivery. The defendant declined to accept delivery of the merchandise and this suit followed. Plaintiff claims $763.55, made up as follows: For the purchase price of merchandise, $524.65, and for damages resulting from breach of contract of sale, $138.80. In other words, some of the merchandise sold defendant was resold upon his refusal to accept delivery and the difference in price obtained by resale claimed as damages and other merchandise was stored for account of defendant and the purchase price claimed in this suit. The defendant admits the purchase of plaintiff's goods but says that it was agreed that the prices were to be guaranteed. That is to say that if prices declined between the date of giving the order and the date of delivery, defendant was to be given the benefit of the difference. Defendant also raises a question of law, contending that it was plaintiff's duty to minimize his damages with respect to the merchandise for which he claims the full purchase price and that he should have sold the goods for that purpose at the time of defendant's alleged breach and not subject defendant to the risk of deterioration.

There was judgment below in plaintiff's favor for $34.00 and plaintiff alone has appealed.

It is admitted that plaintiff refused to give the defendant the benefit of the decline in prices between the time of the giving of the order and the time of attempted delivery and the defendant claims to be justified in refusing delivery on this ground alone.

We must therefore determine whether there was any such condition in the sale or sales made defendant.

It is in evidence, and a fact concerning which we might well take judicial cognizance, that due to the World War then (1920) lately terminated, most unusual trade conditions obtained and the price of all commodities was most unstable. One of the witnesses testified that it was the custom in all lines to guarantee prices and that sales could not otherwise be consummated. This circumstance to our minds transforms defendant's contention from the improbable to the probable. Under ordinary conditions we would not expect a manufacturer or dealer to market his wares upon such uncertain terms particularly when, as in this case, months intervened between the sale and proposed delivery. Moreover, a purchaser of goods in quantity usually anticipates the possibility of a decline in market value and in assuming this risk he comforts himself with the hope of an advance and balances one against the other. But a World War produces many changes in its wake many times more remarkable than we are considering here. Therefore we approach the consideration of this question of fact entirely free of any sense of improbability which under ordinary and more tranquil conditions would beset us. Rosenstock, the defendant, testifies:

"Q. Mr. Rosenstock, what was the agreement actually made with reference to prices of goods?
A. The prices were guaranteed to me; the bills of goods were bought to be delivered October 1.
Q. What did you mean by guaranteeing prices?
A. To mean, if the price is down to 5 cents a yard, I will get the benefit, and if it is up, it is going to be the same price; but it was no chance to go up, there was a chance to go down.
Q. Were you willing to buy the goods without guaranteeing the prices?
A. No sir, I wouldn't buy it from no man at that time."

His testimony is assailed by plaintiff's counsel because of a letter written to counsel under date of November 13, 1920, in reply to a letter making demand for payment. In this letter defendant makes the following statement. "In other words I have not signed a written agreement and do not see how they can sue me by it." In the same letter, however, defendant complains of plaintiff refusing to allow him a reduction in price commensurate with the fall in the market and while his defense to the claim seems to be based upon his mistaken conception of the validity of verbal agreements it appears from his letter as well as his testimony generally that he is a man of little education whom we would be loath to hold to the responsibility for exact statement expected of a more sophisticated litigant. Besides there is ample corroborative evidence to sustain his legal position in this regard were we to ignore his testimony altogether.

The witness Sandros, a former clerk of defendant, testified that he was present in defendant's store when the sale was made by plaintiff's salesman and heard the conversation and in response to an interrogatory by the Court, said:

"Mr. Rosenstock said he didn't want to buy any goods because the prices were dropping every day, so Mr. Quigley (plaintiff's salesman) said he would guarantee the prices, if the prices would go down, Mr. Rosenstock would get the benefit."

Whitmore, a traveling salesman for the Progress Knitting Mills testified that he was present and heard Mr. Rosenstock say that the only condition upon which he would buy would be a guarantee of price which plaintiff's salesman agreed to and he, Whitmore, assisted the salesman to write the order. This witness also states that he had been twenty-one years with the Progress Knitting Mills and that he on behalf of his employer had to guarantee prices to date of delivery.

The witness Meyer, a shoe salesman for the Seld Shoe Co., testified that:

"Mr. Whitmore and myself were in the place, and this representative of the Marks Ribbon Company came in and I had plenty of time and we gave him full power to work with Mr. Rosenstock awhile, and after talking to Mr. Rosenstock, Mr. Rosenstock wasn't inclined to buy any goods and they were arguing for a long time and the representative said he guaranteed prices up to the time of delivery. Then Mr. Whitmore said 'You don't have to worry, Mr. Rosenstock, you are protected', and Mr. Rosenstock bought some goods."

Two wholly disinterested witnesses and a former clerk who was not in Rosenstock's employ at the time he testified, positively corroborate the defendant. Against this testimony we have only plaintiff's salesman whose testimony we will not review under the circumstances. The evidence clearly preponderates in defendant's favor.

For the reasons assigned the judgment appealed from is affirmed.